# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**KHADIJA DUMA**
~~PO Box 1023~~ 1840 Massachusetts Ave., SE
Washington, DC, ~~20013~~ 20003
(202) 546-6281

                                      Case: 1:08-cv-00581
                                      Assigned To : Bates, John D
          VS.                              Assign. Date : 4/4/2008
                                        Description: Labor - ERISA

*JURY ACTION*

**UNUM Provident**
**Legal Department**
**2211 Congress Street**
**Portland, ME 04122**

**Fannie Mae**
**Legal Department**
**3900 Wisconsin Avenue, NW**
**Washington, DC 20016**

**Dror Oppenheimer**
**c/o Fannie Mae Legal Department**
**3900 Wisconsin Avenue, NW**
**Washington, DC 20016**

**Karen Mychalus**
**c/o Fannie Mae Legal Department**
**3900 Wisconsin Avenue, NW**
**Washington, DC 20016**

**Verna Robinson**
**c/o Fannie Mae Legal Department**
**3900 Wisconsin Avenue, NW**
**Washington, DC 20016**

1

# COMPLAINT

COMES NOW the plaintiff, Khadija Duma, asking this Honorable Court (Court) to grant her relief from the unlawful, retaliatory, hostile, bad faith and harmful action taken against her by defendants UNUM Provident (UNUM), Fannie Mae, Dror Oppenheimer (Fannie Mae), Karen Mychalus (Fannie Mae), and Verna Robinson (Fannie Mae) in (1) violation of the Employee Retirement Income Security Act (ERISA), (2) violation of my constitutionally-guaranteed first amendment right of freedom of speech, (3) violation of the Sarbanes-Oxley Act (SOX), criminal and/or civil whistleblower provision(s), (4) civil RICO, (5) violation of my civil rights, and (6) discrimination against me based upon my race, gender, and age (EEOC).

Plaintiff seeks a trial by jury, thirty million dollars and treble damages from the defendants as a remedy for their vicious actions against me; or, in the alternative, plaintiff seeks immediate full payment of the long-term disability payments UNUM should have paid me for a minimum of four years, immediate fully-vested status in Fannie Mae coupled with the associated and immediate payout to me of the pension payments from the date I would have become eligible for pension payments based upon Fannie Mae's Fifty Plus Five early out program through the life of the regular company pension plan, lump-sum payment of all full back pay from the last full paycheck I received from Fannie Mae, to include a twenty percent per annum pay increase for each subsequent year, through December 31, 2010, reimbursement for all medically-related expenses I have incurred since leaving Fannie Mae, Fannie Mae one hundred percent paid PPO medical, dental and life insurance (equal to no less than a net three million dollars to my beneficiary with no restrictions as to cause of death in releasing death benefit), at the maximum rate I would be entitled to if I continued working for Fannie Mae through December 31, 2010, for me for the rest of my natural life, the full market value of my home as appraised in 2005, an immediate lump sum monetary payment of a net ten million dollars for the harm they have done to me and my family, and a written apology from each of the defendants Oppenheimer, Mychalus and Robinson which details, in their own words and signed in their handwritten signatures, what they have done to me. Frank Raines had a golden parachute, as do most corporate executives, but I did not have one. I did my job well and was punished for it. Then OFHEO and the US Securities and Exchange Commission came along and sanctioned Fannie Mae for many of the same misdeeds I internally and externally blew the whistle about (to my detriment). In pursuit of UNUM and Fannie Mae's agenda against me Oppenheimer, Mychalus, and Robinson (and others) created such a hostile work environment for me that I could not have survived it even if I had not been ill. The work environment they made for me could not have been analogous to a Middle Passage slave ship, but it certainly made me feel as though I was not far removed from a plantation.

## BACKGROUND

1.) UNUM Provident (UNUM) historically has a pattern of behavior in which it arbitrarily and capriciously denies legitimate long-term disability claims in order to increase company profits. UNUM has been successfully sued many times by both claimants and government officials as a direct result of the callous disregard in which they have played with and damaged the lives of claimants all for the sake of corporate greed. In this instant case, UNUM is the beneficiary of unjust enrichment. UNUM gleefully collected long-term disability premiums from me under the guise of providing a safety net for me and my family in the event that I became disabled. Well, I became disabled and UNUM decided that a few payments to me were more than enough. Although the amount that they collected from me via payroll deductions was neither rejected nor was there any indication from either UNUM or Fannie Mae that I would basically be on my own in the event that I became disabled the unfortunate truth of the matter seems to be that I have always been on my own in trying to manage my disability with UNUM and Fannie Mae. UNUM has been sanctioned by the courts for its unethical, illegal corporate behavior. My long-term disability payments were terminated in April 2004 without prior notice to me from UNUM.

2.) Traditionally the courts have held, in a light most favorable to the plaintiff, that claimants should not be penalized by the failures or mistakes of their medical care providers when those failures and mistakes are not harmless error, but instead result in significant harm to the claimants. When I gave him the form to fill out for the medical review of my disability for UNUM Dr. Warren Yu (George Washington University Hospital Medical Faculty, head of orthopedic spinal surgery) made mistakes. The supplemental paperwork that he submitted to correct his mistakes which indicated that I could return to work when I was not able to return to work was rejected. I probably would have caught the mistakes in the paperwork, if I had not been hassled so badly by Dr. Yu's admin, Claudia, when I tried to get the paperwork filled out and then again when I tried to pick it up to send in to UNUM. I had, on many occasions, indicated to both Brendan O'Donnell, my UNUM representative, and Dr. Sos Mboijana, my primary care physician (PCP), that Claudia was constantly giving me a hard time whenever I had to deal with her. My complaints to Dr. Yu about Claudia did not yield any benefit to me except for one occasion when he was present when she was arguing with me over the request from UNUM and he stepped in and told her that he thought what I was asking for was reasonable. She wanted to know why UNUM was even asking for the information although it was not her place to interfere. When I told a UNUM representative that I did not see any recourse except to take my appeal to court I was warned not to do it. When I asked why he would not say.

3.) The insurance industry, as a whole, has in the past and continues to sacrifice the well being of its insured to satisfy their greed. UNUM makes millions of dollars each and every year by denying legitimate claims. The insurance

industry, as a whole, makes billions of dollars each and every year by denying legitimate claims.

4.)    UNUM was in contact with my employer, Fannie Mae (FNMA) regarding my eligibility for long-term benefits. Fannie Mae repeatedly demonstrated its intent to prevent me from benefiting from the right of disability coverage, and to make my time spent on disability as much of a hardship as the disability itself has been. The relationship between UNUM and Fannie Mae needs to be seen in the sunshine with corporate accountability as the objective. The ability to lie and rewrite history is sometimes a desirable skill set at Fannie Mae. Why did Fannie Mae, during my employment with them, have a long-term benefits program with a company such as UNUM that did not provide rehabilitative services for anyone other than mechanics? (I received that information directly from the head of the rehabilitative group, Richard Hall, when I frequently and actively sought rehabilitative assistance, to no avail, within UNUM).

5.)    As the insured I am at a distinct disadvantage in filing this appeal pro se. I have tried unsuccessfully to hire an attorney to handle this matter; however, without the funds necessary to pay an attorney a retainer I would have had to sign over such a significant percentage of the monies owed to me as a direct result of the dishonorable denial of benefits by UNUM that the end result would have been that I still would not have enough to buy my medicine, pay for medical insurance and keep my household running. To pay the filing fee for this complaint I had to not pay some of my household bills, but since I may not have a roof over my head soon anyway I decided to risk it. Any victory experienced by the restoration of benefits (past, present and future) would have been muted by the amount I would have had to turn over to an attorney. A victory in principle only while absolutely necessary for me would not be a victory in reality, if I had to turn over the money that I need to survive to an attorney who accepted the case on an unbelievably profitable contingency for that attorney; I am already drowning with homelessness for my son and I imminent.

6.)    The United States Social Security Administration (SSA) has determined that I am totally disabled and they do not expect improvement in my disability; a fact already known by both UNUM and Fannie Mae. While I was actively working at Fannie Mae Dror Oppenheimer, Karen Mychalus, Verna Robinson and the human resources department at Fannie Mae, specifically Lisa Kober, all knew that I had serious health problems. They knew that, as a direct result of my health, I was struggling to keep going to meet their project deadlines (I never missed a deadline or had a failed project that I shepherded from cradle to grave). They conveyed to me that vacation and time off could impact priority schedules, so I had to give up doctor's appointments and vacation time while they all took vacation and time off. SSA scrutinized my application for Social Security Disability benefits on the local level and then sent all of my medical files along with my application to their regional review

4

unit for a much more detailed review before making a final determination granting me benefits. They reviewed my case again not so long ago; my total disability was affirmed. This determination was based upon the same medical information made available to UNUM when it denied my benefits.

7.)   I have borrowed money from predatory lenders, borrowed money from friends (and former friends). I am currently trying to sell all of my material possessions to have a place to live. I have spent money that I needed for medicine all in an effort to keep a roof over our heads. I have become more ill due to the lack of medication and follow-up care, stress and depression from my disability and the loss of my disability benefits. I now stand to lose my house, my health and perhaps, my life as a result of this inequity. The last prescription I received has a side effect that may cause thoughts of suicide. The small income that I receive is not even enough to cover my subsistence, but without it I would have nothing.

8.)   I made a request to UNUM for a complete copy of my claim file to include detailed notations indicating any omissions in the copy sent to me that UNUM decided not to send to me; at the same time I requested a copy of the contract between Fannie Mae and UNUM which detailed UNUM's mission to provide long-term disability benefits to full-time Fannie Mae employees. I did not receive the detailed notations regarding omissions and I did not receive the contract although I requested both items several times. I, therefore, have no way of knowing what was not included in the copy of my claim file that was eventually sent to me, why there were omissions, and what the contract between Fannie Mae and UNUM is regarding long-term disability benefits. At this point, I believe only a subpoena or the discovery process would glean that information for me.

9.)   I have had additional diagnostic testing in an attempt to find out why I still have the symptoms that I had prior to the invasive cervical surgery with donor bone, titanium plate fusion. The lower back pain has not been sufficiently addressed, and, therefore, no reasonable assumption could be made that the problem was resolved. While UNUM seems to have limited focus in this matter, there were several symptoms documented as primary and secondary causations for my disability all of which are still outstanding.

10.)  While technically, so I am told, the invasive cervical surgery with donor bone, titanium plate insertion and fusion that I reluctantly agreed to, due to coercion from Fannie Mae (Karen Mychalus and Verna Robinson), was a success it did not relieve me of the symptoms. I sought alternatives to the invasive surgery because of the risks to me including a birth defect in my heart. I went to acupuncture, massage therapy, physical therapy, alternative medicine and pain management, but the symptoms continued. Mychalus and Robinson were unrelenting in their insistence that I have the surgery and return to Fannie Mae as soon as possible, While I was on short-term disability (STD) the supervising nurse at Fannie Mae was similarly insistent that I have the

5

surgery. If I was performing at such a poor level, as Mychalus and Robinson asserted, why would they want me to hurry up and have the surgery so that I could hurry up and return to Fannie Mae? The second opinion by Dr. Linehan (orthopedic surgeon) suggested that the surgeries that were recommended might not relieve me of the symptoms. The bony spurring that I had prior to the surgery which Dr. Yu said was causing some of my symptoms still exists as evidenced by recent diagnostic examination. I have also been experiencing spontaneous swelling in my left leg which prevents me from bending it or walking on it at times; these symptoms are accompanied by tremendous pain. Dr. Mboijana sent me to have an ultrasound to try to determine the cause; to date there is no ready explanation for the cause of the spontaneous swelling or the original symptoms. I had an EMG prior to Dr. Nevaiser's (George Washington University Hospital Medical Faculty, chief of orthopedic surgery) examination of me. Dr. Nevaiser read the EMG results and examined me. The EMG results that he examined stated that I had carpal tunnel (a pinched nerve). Dr. Nevaiser said that the EMG was wrong and that I did not have carpal tunnel. Recently, Dr. Yu ordered an EMG for me at GW Medical Faculty, however, the doctor was not able to complete the diagnostic because I could not tolerate the pain. Dr. Mboijana subsequently referred me to Dr. Philip Pulaski. Dr. Pulaski ordered another EMG (8/2004) and an MRI (8/2004). While the EMG that Dr. Pulaski ordered was painful I was able to get through it. The results of that EMG state that I do have carpal tunnel on both sides. Per the MRI, I also have bony spurring and lower back abnormality. Pain continues at a level that I cannot tolerate without medication. The medication is potent enough to dull the pain renders me unable to perform my functions at Fannie Mae. Dr. Mboijana suggested trying neurontin; however, I am vulnerable to the side effects of neurontin. After I had the prescription filled I read the accompanying information about the side effects and have chosen not to take it. In the news recently there was derogatory information about the bad side effects of neurontin. Dr. Mboijana does not believe that the carpal tunnel is the finite answer. Both he and Dr. Pulaski believe that finding a way for me to manage my pain is key. Dr. Pulaski told me that I have operable conditions, but I do not want any additional invasive procedures and he agreed with that decision. Furthermore, Dr. Mboijana has performed extensive blood testing on me and I have elevated levels of inflammation. I have been referred to doctors to pursue the inflammation and pain management; however, I cannot afford to go. I cannot afford the medicine that I need for my hypertension and pain. I cannot afford the co pays. I owe money now for copays for the examinations already performed. I do not have an income that I can survive on right now. The loss of my long-term disability payments has created an unbearable hardship for me and my family. I intended to go directly to the courts for injunctive relief, but was informed by one of the attorneys that I consulted that I would first have to appeal UNUM's decision to deny my benefit. Well, I appealed UNUM's decision and they denied my appeal.

11.)    The aquatic classes which I participated in were not a remedy for any of the symptoms that I have experienced throughout my disability. I have always indicated that the benefit to me was that while I had almost no mobility on land unless I was pumped full of pain killers, in the water I had more mobility. The added advantage to taking the classes was that it lifted some of my depression resulting from being in the house most of the time and, for the most part, spending my time outside of the house going from one doctor to another or picking up prescriptions. In the classes I found a lot of people like myself who were also struggling with disabilities. However, the classes did not relieve the pain or improve the disability once I was out of the water. Any benefit I received from the classes was temporary at best.

12.)    As a Senior Business Manager, in name only, at Fannie Mae I would have been required to 1.) spend hours in meetings sitting, 2.) spend hours at a workstation typing (constant repetitive motion) on a laptop or PC workstation, 3.) spend hours performing analytical functions that mandate clarity of thought and precise attention to detail, 4.) spend hours interfacing with peers, business customers, upper-level management, 5.) produce documentation that often requires extensive research and writing, 6.) provide training that often requires standing for prolonged periods of time, and lifting very heavy computer printouts from the testing of Fannie Mae's financial systems and new lender products. I am not able to perform these functions. I went from six-figure income compensation to being below the poverty line in one fell swoop. I worked six, seven days a week in twelve, fourteen, sixteen hour days for years for Fannie Mae to obtain that level of compensation. Giving it up to collect Social Security Disability payments was not in any of my plans.

## FANNIE MAE 101

13.)    I began working at Fannie Mae as a Senior Project Manager in a contract position. I worked for a division that was responsible for the production system that processes all Fannie Mae financial systems (including those that follow the life of mortgages and mortgage-backed securities).

14.)    I remained in the contract position for over two years. I converted to a Fannie Mae fulltime employee (FTE) in June 2000 when I accepted a position as a Senior Business Manager in the mortgage operations division (Asset Development and Management (ADM) --- this division has a slightly different name now).

15.)    Although as a contractor I was a "direct-report" to a Fannie Mae director I was allowed to work independently, for the most part, as a direct result of the quality of my work. During my tenure as a Senior Project Manager I never had a failed project or flawed implementation. I never missed an implementation deadline. I always had thorough and complete testing of any changes to the production system before implementation, and all changes were thoroughly disclosed and documented.

7

16.)    My Fannie Mae director, the director she reported to and the Senior VP for the group that I worked for recommended me for the Senior Business Manager position based upon the quality of the work that I had performed for them.

17.)    Going to work in the mortgage operations division was a fatal mistake. I had been warned by other Fannie Mae employees not to go into that division, but I went any way.

18.)    My responsibility in mortgage operations was as a process manager. I had the responsibility for testing of all new products associated with the primary loan process for Fannie Mae's financial systems prior to the products being released to lenders for public use. Upon assuming the position over the test team I discovered many incorrect practices. I bumped heads with many directors, upper level managers, test team members and others in my attempts to correct what was wrong. Many of the directors were not interested in corrections. They were interested in getting their bonuses at whatever cost. I was told that I always said, "No". My response was that I said "No" to incorrect practices, flawed implementations and lack of disclosure. Mortgage operations was and until I left on long-term disability remained a culture of "cover up" and "go along to get along". Unfortunately for me that has never been the way that I operate. They did everything they could to me to destroy my reputation and to make me fall in line. I became an inside whistleblower. When I saw practices that were incorrect I reported them to my direct-line management (Oppenheimer, Mychalus, Kathy Mull, Robinson). When I was asked or directed to do something that was incorrect I reported it to my direct-line management (Oppenheimer, Mychalus, Kathy Mull, Robinson). However, my direct-line management never supported me (Oppenheimer, Mychalus, Robinson) instead they created a hostile work environment for me. After much ugliness, and so much stress that it was affecting my health late one night I send a forty-page email to Frank Raines and Dan Mudd detailing my plight and asked for their help. I received an email reply from Dan Mudd two weeks later stating that he had asked the head of the legal department to get in touch with me (this never happened) to investigate my claims.

19.)    I filed a discrimination complaint against Fannie Mae, and the charging documents (based upon race, gender and age discrimination) were supposed to be served upon Fannie Mae. However, upon receipt of the original charging document which I was supposed to sign and return to EEOC so that Fannie Mae could be served I discovered that there were so many errors in the document that I would not sign it. I tried many times to reach the man who had interviewed me, but he never returned my calls. Eventually, I went back to the EEOC office only to discover that he was no longer in that office. I spoke to two supervisors there who promised me that although the time to sign and return the document to them so that Fannie Mae could be served had expired that under the circumstances and because I told them that I was having serious health problems they would process the complaint whenever I could get the corrections to them (this turned out to not be the truth). I spent a lot of

8

time going back and forth with the EEOC trying to get the corrections done and the complaint processed (Fannie Mae was aware of this because I had informed them). Fannie Mae told me that they conducted their own investigation and determined there was no wrong doing on their part; but, they failed to investigate my whistleblower assertion.

20.) At the urging of human resources, specifically Lisa Kober, I went out on STD because of my health. The STD turned into long-term disability (LTD). During the STD Fannie Mae did many unethical things to me to make my life miserable including stopping my payments several times. They may have a hand in UNUM Provident's decision to terminate my LTD. Before I went out on short-term disability Fannie Mae offered me a Voluntary Separation Option (VSO). I had twenty-one days to decide whether I would take the package. There were twelve days remaining on that time limit when I went out on STD.

21.) Fannie Mae allowed a manager to go back and change her statements regarding me so that they appeared more negative after I had already been given a performance review. Fannie Mae claimed that suddenly (after all the work that I had successfully designed, initialized, thoroughly tested and implemented) I did not have the ability to function as a senior-level employee. Fannie Mae was aware of my health problems, demanded that I work long hours, give up vacation time while others including my managers took their vacations, and neither provided promised training for the multi-million dollar projects I was responsible for nor provided support for me while I managed those projects. Yet, I still successfully completed the projects on time.

22.) Robinson was relentless in her harassment of me. She would page me constantly even paging me out of meetings that I was conducting for my projects; but, the reasons she paged me would be nonsense. Nothing that I did was right. She would contradict herself constantly in dealing with me. She would raise her voice to the point of almost screaming when talking to me. The bottom line was that she wanted me out. I had always received praise for my writing ability, and she told me that I could not write. My director (Mychalus) placed me on troubled projects to get them successfully completed on time, and I never failed. Mychalus documented in my first performance appraisal that I had tried to implement many changes to better mortgage operations; some were implemented others were not due to pressure from Fannie Mae management. Yet my director (Mychalus) and manager (Robinson) said that I could not perform on a senior-level? Oppenheimer got rid of my position, without formal notice of any kind to me, and decided that I was only a tester. However, he kept my title as senior business manager. Fannie Mae (human resources, Oppenheimer, Mychalus, Robinson) deliberately provided a misleading job description to UNUM to support UNUM's denial of my long-term disability benefits after they had been approved in an effort to force me back into Fannie Mae long enough to question me about being a whistleblower. They provided conflicting information about my status. They told a third-party collection company that I

9

had been terminated and that the money I had been loaned as a part of the Employee Assisted Housing (EAH) program should be collected. They told me that I was not ever eligible for EAH again. They told me that I had to return to my job because UNUM stated I was able to work as a senior business manager and I had been assigned a human resources representative to work with on coming back to Fannie Mae. The human resources representative they assigned me to work with told me that my job had been eliminated and that I had sixty days to find another one within the company or I would be terminated. Since I was not physically able to return to work and the constant strain of being told so many different things regarding my status was overwhelming stress my PCP determined that I was still totally disabled.

23.)    I strengthened the testing team, taught them new skills, improved the testing process and yet I had no skills? My director (Mychalus) documented these contributions in my first performance review. Many of the complaints OFHEO has lodged against FNMA are complaints I lodged while working for Fannie Mae; but, I was punished for opening my mouth.

24.)    I applied for a management position on the production-side of Fannie Mae to get out of mortgage operations. When I went to interview with the director (the same person who had highly recommended me for the position with mortgage operations) he was angry with me. He said that everyone in the group that I used to work with on the production side was upset with me because I had disclosed failings in the loan processing in the primary financial system (which I should have done because it was part of my job). He told me that I should have come to him instead of revealing the weaknesses to mortgage operations. His friends in mortgage operations shot me down on it anyway. He once approached me in the cafeteria and told me that I thought that just because something was the truth that I could just say it. He was absolutely right. He browbeat me so badly that as soon as I left the "interview" I went to the nearest telephone outside his office, called human resources to see what I had to do to withdraw my application for the position, was told by human resources that since that group did their own hiring I would have to let the director who interviewed me know that I was withdrawing my application for the position, I said, "okay" and went to the nearest desktop workstation outside his office, signed on and immediately sent him an email stating that I was withdrawing my application for the management position (all of this information was provided to Frank Raines and Dan Mudd in the email that I sent to them).

25.)    After OFHEO's first hit against Fannie Mae the legal department at Fannie Mae had someone call me about my whistleblower assertion in the email that I sent to Frank Raines and Dan Mudd. She left a message for me, however since I was out on STD I never returned the call in keeping with Fannie Mae policy at that time.

10

26.)    While I was brutalized for speaking out at Fannie Mae I told friends about the problems I was having as a whistleblower. A buddy, at that time, was also an administrative law judge within the US Securities and Exchange Commission. She has since retired. Although she was not in enforcement I always assumed from our conversations that she shared the information that I passed along to her regarding Fannie Mae with her colleagues.

I ask this Court to grant me relief from the unlawful, retaliatory, hostile, bad faith and harmful action taken against me by defendants UNUM Provident (UNUM), Fannie Mae, Dror Oppenheimer (Fannie Mae), Karen Mychalus (Fannie Mae), and Verna Robinson (Fannie Mae) in (1) violation of the Employee Retirement Income Security Act (ERISA), (2) violation of my constitutionally-guaranteed first amendment right of freedom of speech, (3) violation of the Sarbanes-Oxley Act (SOX), criminal and/or civil whistleblower provision(s), (4) civil RICO, (5) violation of my civil rights, and (6) discrimination against me based upon my race, gender, and age (EEOC).

Plaintiff seeks a trial by jury, thirty million dollars and treble damages from the defendants as a remedy for their vicious actions against me; or, in the alternative, plaintiff seeks immediate full payment of the long-term disability payments UNUM should have paid me for a minimum of four years, immediate fully-vested status in Fannie Mae coupled with the associated and immediate payout to me of the pension payments from the date I would have become eligible for pension payments based upon Fannie Mae's Fifty Plus Five early out program through the life of the regular company pension plan, lump-sum payment of all full back pay from the last full paycheck I received from Fannie Mae, to include a twenty percent per annum pay increase for each subsequent year, through December 31, 2010, reimbursement for all medically-related expenses I have incurred since leaving Fannie Mae, Fannie Mae one hundred percent paid PPO medical, dental and life insurance (equal to no less than a net three million dollars to my beneficiary with no restrictions as to cause of death in releasing death benefit), at the maximum rate I would be entitled to if I continued working for Fannie Mae through December 31, 2010, for me for the rest of my natural life, the full market value of my home as appraised in 2005, an immediate lump sum monetary payment of a net ten million dollars for the harm they have done to me and my family, and a written apology from each of the defendants Oppenheimer, Mychalus and Robinson which details, in their own words and signed in their handwritten signatures, what they have done to me.

I am financially ruined. My son and I are going to end up living on a grate in the nation's capital because I did my job and tried to prevent some of the madness we are now experiencing in the mortgage industry. My destruction is my reward. Fannie Mae and Bear Stearns helped to create the madness we are now experiencing in the mortgage industry. Their reward is a bailout and opportunities to make more money. There are so many surveys now showing that our children are getting younger and younger when they begin to show signs that they believe cheating and literally destroying their opponents is the only way that they can succeed; and, we as parents and adults who show them by example exclaim incredulous when we discover their dishonor. How can we lead the world as a super power when we walk on quicksand? Only in America.

11

_Khadija Duma_ (signature)

Khadija Duma
~~PO Box 1023~~ 1840 Massachusetts Ave, SE
Washington, DC ~~20013~~ 20003

(202) 546-6281

12

08 cv 581
JDB

**I (a) PLAINTIFFS**

Khadija Duma

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____ 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

~~PO Box 1023~~, Washington, DC ~~20013~~
(202) 546-6281

1840 Massachusetts Ave, SE
20003

**DEFENDANTS**

UNUM Provident, Fannie Mae, Dror Oppenheimer,
Karen Mychalus, Verna Robinson

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY) ____ Portland, ME
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

Case: 1:08-cv-00581
Assigned To : Bates, John
Assign. Date : 4/4/2008
Description: Labor - ERISA

JURY ACTION

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◉ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ◉ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**       OR       ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

5

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans<br>(excluding veterans) |

| ● **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | ○ **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
ERISA 502; UNUM Provident with Fannie Mae, denied my long-term disability benefits after first approving them in retaliation due to my whistleblowing.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23  DEMAND $ $30,000,000.00  JURY DEMAND: Check YES only if demanded in complaint  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE Apr. 4, 2008  SIGNATURE OF ATTORNEY OF RECORD *Khadija Nunia, pro se*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.