UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
KHADIJA DUMA,                       )
                                    )
        Plaintiff,                  )
                                    )
    v.                              )   Civil Action No. 08-0581 (PLF)
                                    )
UNUM PROVIDENT, et al.,             )
                                    )
        Defendants.                 )
_____)

OPINION

This matter is before the Court on plaintiff's motion for rescission or, in the alternative, for reformation of the voluntary dismissal of her claims against defendant Unum Provident. Upon consideration of the parties' papers, the relevant legal authorities, and the entire record in this case, the Court will deny plaintiff's motion.[1]

I. BACKGROUND

On April 4, 2008, plaintiff Khadija Duma filed this action *pro se* against defendants Unum Provident, Fannie Mae, and three individually named defendants, "asserting a broad panoply of claims under the Employment Retirement Income Security Act ["ERISA"], the First Amendment, the Sarbanes-Oxley Act, civil RICO, and the anti-discrimination statutes." Memorandum Order at 1, May 4, 2009 (Robertson, J.). The central focus of plaintiff's action

---

[1] Among the papers reviewed in connection with the pending motion include the following: plaintiff's motion for rescission or, in the alternative, for reformation of the voluntary dismissal of her claims against Unum Provident ("Mot."); and Unum Provident's opposition to plaintiff's motion ("Opp."). Plaintiff did not file a reply.

was to obtain long term disability benefits from Unum Provident pursuant to an insurance policy issued by Fannie Mae, plaintiff's former employer, as part of an employee welfare benefit plan governed by ERISA, 29 U.S.C. § 1000, et seq. See Memorandum Order at 1, May 4, 2009 (Robertson, J.). Plaintiff, however, also sought "pension payments, reimbursement for medically related expenses after she left the employ of . . . Fannie Mae, the 'full market value of [her] home as appraised in 2005,' damages of $10 million 'for the harm [that defendants] have done to [plaintiff and her] family,' and a written apology from [the] three individual defendants who are or were employed in the Fannie Mae legal department." Id.

On May 4, 2009, Judge James Robertson issued a Memorandum Order dismissing most of plaintiff's claims. See Memorandum Order at 1-4, May 4, 2009 (Robertson, J.). Specifically, Judge Robertson dismissed all of plaintiff's claims except her ERISA claim against Unum Provident and her Title VII claim against Fannie Mae. See id. at 3-4; see also Memorandum at 1, May 29, 2010 (Robertson, J.). Judge Robertson then ordered that an attorney from the Court's Civil *Pro Bono* Panel be appointed to consult with plaintiff regarding the status of her case and to provide her with legal representation, if appropriate. Memorandum Order at 4, May 4, 2009 (Robertson, J.).

Soon thereafter, on May 21, 2009, attorneys Peter C. Lallas and Jeffrey Pariser of Hogan & Hartson LLP ("Hogan & Hartson") entered appearances on plaintiff's behalf for the limited purpose of mediation and possibly settlement.[2] Mr. Lallas and Mr. Pariser then engaged in settlement discussions with counsel for Unum Provident. Opp. at 2; see Mot. at 3-5. As a

---

[2] Hogan & Hartson LLP and Lovells LLP recently merged. The firm is now known as Hogan Lovells.

2

result, on September 4, 2009, plaintiff and Unum Provident reached a settlement agreement, under which Unum Provident would pay plaintiff $10,000 "in full and final compromise and settlement of all her claims against Unum . . . that were made or which might have been made by" plaintiff. Opp. Ex. C, Settlement Agreement and General Release of Claims ("Settlement Agreement and Release") at 1, Sept. 4, 2009. That same day, pursuant to Rule 41 of the Federal Rules of Civil Procedure, counsel for plaintiff and Unum Provident filed a stipulation of dismissal that "dismiss[ed] this action *with prejudice* as to . . . Unum Provident only." Rule 41 Stipulation of Dismissal ("Stipulation of Dismissal") at 1, Sept. 4, 2009 (emphasis added). Four days later, on September 8, 2009, plaintiff deposited the check issued by Unum Provident for $10,000. Opp. Ex. D at 1, Sept. 8, 2009; see Mot. at 5.

On May 29, 2010, Judge Robertson dismissed plaintiff's final outstanding claim — the Title VII claim against Fannie Mae — on consideration of Fannie Mae's motion to dismiss and plaintiff's written opposition. See Memorandum at 1-2, May 29, 2010 (Robertson, J.); Order at 1, May 29, 2010 (Robertson, J.). Plaintiff filed a notice of appeal on June 7, 2010. Then, on the following day, June 8, 2010, plaintiff filed the motion at issue, requesting rescission or, in the alterative, reformation of the voluntary dismissal of plaintiff's claims against Unum Provident.[3] Because this motion was filed within twenty-eight days of Judge Robertson's final order, the court of appeals, on its own motion, held plaintiff's appeal in abeyance pending this Court's disposition of plaintiff's motion. See Order of the United States Court of Appeals for the District of Columbia Circuit at 1, Nov. 15, 2010.

---

[3] On June 14, 2010, after Judge Robertson's retirement, this case was randomly reassigned to the undersigned.

Plaintiff's motion rests on two grounds. First, plaintiff claims that Hogan & Hartson had a conflict of interest in this case that they failed to promptly disclose to her. See Mot. at 1. Specifically, plaintiff contends that Hogan & Hartson did not immediately inform her that Unum Provident's lead counsel, David E. Constine, had a brother, Jonathan A. Constine, who was a partner at Hogan & Hartson at the time that Hogan & Hartson represented her in this case. Mot. at 1; see Opp. at 2. Plaintiff thus alleges that the "[f]ailure by Hogan and Hartson to make that disclosure before [she] accepted them as pro bono counsel affected material facts of the representation Hogan and Hartson provided to [her]." Mot. at 2. Second, plaintiff claims that she was under duress and coercion when she signed the Settlement Agreement and Release and that she never agreed to a voluntary dismissal "with prejudice" of her claims against Unum Provident. Id.

Unum Provident opposes plaintiff's motion. It argues that plaintiff's motion should be denied because the signed Settlement Agreement and Release "provides Unum with a complete defense to any potential claim by [p]laintiff." Opp. at 2. Moreover, Unum Provident argues that there was no conflict of interest and that plaintiff fails to establish duress as a matter of law. Id.

## II. LEGAL STANDARD

Counsel for plaintiff and Unum Provident filed a Stipulation of Dismissal with prejudice on September 4, 2009. Nine months later, on June 8, 2010, plaintiff filed her motion for rescission or, in the alternative, for reformation. A motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure must be filed "no later than 28 days

4

after the entry of judgment." FED. R. CIV. P. 59(e). By contrast, a motion for relief from a judgment or order under Rule 60(b) must, for certain claims, be filed within one year or, for others, be filed "within a reasonable time." FED. R. CIV. P. 60(c)(1). Unum Provident thus contends that plaintiff's motion — filed nine months after the filing of the Stipulation of Dismissal with prejudice — is governed by Rule 60(b). See Opp. at 2. The Court does not agree. As the court of appeals' order suggests, this motion is properly analyzed as a Rule 59(e) motion to alter or amend a judgment.

Rule 41 of the Federal Rules of Civil Procedure provides that a "plaintiff may dismiss *an action* without a court order by filing: . . . a stipulation of dismissal signed by *all parties* who have appeared." FED. R. CIV. P. 41(a)(1)(A)(ii) (emphasis added). The law is clear that "entry of such a stipulation of dismissal is effective automatically and does not require judicial approval." In re Wolf, 842 F.2d 464, 466 (D.C. Cir. 1988) (internal quotations and citations omitted). Except as provided under Rule 41(a)(1), however, "an action may be dismissed at the plaintiff's request *only by court order*, on terms that the court considers proper." FED. R. CIV. P. 41(a)(2) (emphasis added). The Stipulation of Dismissal in this case was signed only by plaintiff's counsel and Unum Provident's counsel — not by Fannie Mae — and it purported to "dismiss this action with prejudice as to . . . Unum Provident only." Stipulation of Dismissal at 1.

Although the parties agreed to dismiss the action against one defendant in the case on September 4, 2009, there was no final order in the case until May 29, 2010. While the Settlement Agreement and Release constituted a binding contract when signed on September 4, 2009, the claims and the defendant to which they relate were not effectively dismissed until

Judge Robertson implicitly approved the stipulation in his final order. Accordingly, the parties' Stipulation of Dismissal falls under Rule 41(a)(2) and therefore was not a legally effective dismissal of the claims against Unum Provident until Judge Robertson issued his final order on May 29, 2010. It follows that because plaintiff filed her motion on June 8, 2010 — within twenty-eight days of Judge Robertson's final order — plaintiff's motion is a timely Rule 59(e) motion to alter or amend a judgment. See FED. R. CIV. P. 59(e); see also Order of the United States Court of Appeals for the District of Columbia Circuit at 1, Nov. 15, 2010 (citing FED. R. CIV. P. 59(e)).

A motion to alter or amend a judgment "under Rule 59(e) is discretionary with the court and need not be granted unless the Court finds that there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" MDB Communications, Inc. v. Hartford Cas. Ins. Co., 531 F. Supp. 2d 75, 79 (D.D.C. 2008) (quoting Ciralsky v. Central Intelligence Agency, 355 F.3d 661, 671 (D.C. Cir. 2004)). "Rule 59(e) motions to alter or amend judgment are 'not to be used to relitigate matters already argued and disposed of; they are intended to permit the court to correct errors of fact appearing on the face of the record, or errors of law.'" Id. (quoting Independent Petroleum Ass'n of America v. Babbitt, 178 F.R.D. 323, 324 (D.D.C. 1998)). "Such motions are 'disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances.'" Id. (quoting Niedermeier v. Office of Max S. Baucus, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)).

III.  DISCUSSION

Plaintiff alleges that Hogan & Hartson had a conflict of interest that the firm failed to promptly disclose to her.  See Mot. at 1.  Plaintiff contends that her attorneys were "obligated from the outset to disclose the relationship between [Unum Provident's lead counsel, David Constine,] and his brother," Jonathan Constine, a partner at Hogan & Hartson.  Id. at 2.  According to plaintiff, this familial relationship created an inherent conflict of interest, requiring plaintiff's informed consent.  See id.  Thus, because Hogan & Hartson allegedly failed to disclose this familial relationship until approximately two months after attorneys for Hogan & Hartson entered their appearances on plaintiff's behalf, the firm allegedly engaged in "misrepresentation and possibly fraud."  Id.

Plaintiff's claim lacks merit.  The District of Columbia Rules of Professional Conduct provide that

> [a] lawyer related to another lawyer as parent, child, sibling, or spouse shall not represent a client in a representation directly adverse to a person who the lawyer knows is represented by the other lawyer except upon informed consent by the client after consultation regarding the relationship.

D.C. R. PROF'L CONDUCT 1.8(h).  This "disqualification," however, "is personal and is not imputed to members of firms with whom the lawyers are associated."  D.C. R. PROF'L CONDUCT 1.8 cmt 15; see also id. 1.7 cmt. 12 ("Disqualification arising from a close family relationship is not imputed.").  Although Jonathan Constine was in fact a partner at Hogan & Hartson at the time that the firm represented plaintiff in this case, Unum Provident has produced undisputed affidavits establishing that Mr. Constine "had no involvement in that representation and did not participate in that representation in any way whatsoever."  Opp. Ex. A, Jonathan A. Constine Aff.

7

¶ 4, June 22, 2010; see also Opp. Ex. B., Albert W. Turnbull Aff. ¶ 4, June 21, 2010. Plaintiff has not suggested anything to the contrary. The Court therefore rejects plaintiff's conflict of interest claim as it is clearly contrary to established rules of professional conduct.[4]

Plaintiff also has alleged that she was under duress and coercion when she signed the Settlement Agreement and Release and that she never agreed to a voluntary dismissal "with prejudice." Mot. at 5. Specifically, plaintiff alleges that her attorneys sent a notary public to her home with the Settlement Agreement and Release and that the notary public then coerced plaintiff into signing the agreement without giving her the opportunity to read it. See id. Then, plaintiff alleges that her attorneys "did not have [her] agreement or permission" to dismiss her claims against Unum Provident "with prejudice." Id.

"[D]uress is any wrongful threat of one person by words or other conduct that induces another to enter a transaction under the influence of such fear as precludes him from exercising free will and judgment . . . ." Dyer v. Bilaal, 983 A.2d 349, 360 (D.C. 2009) (alteration in original) (internal quotations and citations omitted). "Absent a showing of fraud or duress, parties are bound by the agreements that they sign, without regard to whether they regret their decisions after the fact." Johnson v. Penn Camera Exch., 583 F. Supp. 2d 81, 86 (D.D.C. 2008).

The Court finds that there is no evidence that plaintiff's execution of the Settlement Agreement and Release was a product of anything other than her own free will.

---

[4] In addition, according to plaintiff's own allegations, Hogan & Hartson did in fact disclose the familial relationship between Jonathan Constine and David Constine "approximately two months after [her attorneys] had several detailed conversations with" her, Mot. at 2, presumably in July of 2009. This disclosure was two months before plaintiff signed the Settlement Agreement and Release, and accepted and deposited the $10,000 check.

Plaintiff admits, as she must, that she signed the Settlement Agreement and Release, providing that "Unum will pay to Duma the total sum of Ten Thousand Dollars and Zero Cents . . . *in full and final compromise and settlement of all her claims against Unum* . . . that were made or which might have been made by Duma . . . ." Settlement Agreement and Release ¶ 1 (emphasis added); see also id. at 7 ("The parties acknowledge that the execution of this instrument confirms the termination of any rights Duma had or may have had . . . and any claims arising out of or related to her claims for ERISA benefits."). Plaintiff asserts, however, that she "was not allowed to read [the Settlement Agreement and Release] before signing it" because the notary allegedly "made that impossible." Mot. at 6.[5] This bare, unsworn allegation comes nowhere near the standard for a claim of duress. And even assuming that plaintiff was under duress, her claim fails because she acknowledges that she subsequently read the Settlement Agreement and Release, see Mot. at 6, and she then accepted and deposited the settlement check for $10,000; she then waited nine months to file the motion at issue here. See Schmidt v. Shah, 696 F. Supp. 2d 44, 63 (D.D.C. 2010) ("'[I]t is . . . well-established that a victim of duress may be held to have ratified the agreement by accepting its benefits.'") (alteration in original) (quoting Wright v. Foreign Serv. Grievance Bd., 503 F. Supp. 2d 163, 174 (D.D.C. 2007)); Goldstein v. S & A Rest. Corp., 622 F. Supp. 139, 145 (D.D.C. 1985) ("While delay in disaffirming a contract may preclude avoidance of the contract's operation, . . . the acceptance of benefits under the contract necessarily bars denial of its validity.").

---

[5] The Settlement Agreement and Release signed by plaintiff expressly states that she "carefully read and fully understands all of the provisions," Settlement Agreement and Release ¶ 9, and that she was "under no form of duress" when she signed the agreement and release. Id.

9

With respect to plaintiff's claim that she never authorized her attorneys to dismiss her claims against Unum Provident "with prejudice," Mot. at 5, neither plaintiff nor Unum Provident has submitted affidavits or declarations concerning conversations between plaintiff and her counsel about what the Stipulation of Dismissal would say. And the Settlement Agreement states that upon execution of the agreement and release, an agreed dismissal order would be filed with the Court "dismissing all claims asserted by Plaintiff in the Lawsuit against Unum . . . ." Settlement Agreement and Release ¶ 2. It does not say whether the dismissal would be with or without prejudice.

Nevertheless, as an initial matter, the Court doubts very much that Unum Provident's counsel would have advised their client to settle this case and pay Ms. Duma $10,000 unless Ms. Duma's claims against Unum Provident were to be dismissed with prejudice. See Healey v. Labgold, 271 F. Supp. 2d 303, 305 (D.D.C. 2003) ("[D]ismissals with prejudice are a matter of course in settlement agreements. Why settle a case, pay good money, and leave oneself exposed to another lawsuit?"). More important, in the Settlement Agreement and Release, Ms. Duma expressly agreed to "*fully, finally and forever* settle and release all of the claims against Unum." Settlement Agreement and Release ¶ 4 (emphasis added). Given this clear statement of finality and the overall breadth of the language in the Settlement Agreement and Release, see id. at 1 ("[T]he parties each desire *to resolve and put an end to any disagreements or disputes* between them arising out of any of the matters aforesaid and *to settle any and all claims* of Duma which may now exist or have existed in the past.") (emphasis added); see also id. ¶ 4 ("[T]he execution of this Agreement shall be and remain in effect as a full and complete release of the claims asserted in the Lawsuit against Unum . . . ."), any reasonable

10

person would interpret the Settlement Agreement and Release as an agreement to dismiss this case against Unum Provident with prejudice.

The Court concludes that plaintiff has not established any "'extraordinary circumstances'" entitling her to relief under Rule 59(e) of the Federal Rules of Civil Procedure. MDB Communications, Inc. v. Hartford Cas. Ins. Co., 531 F. Supp. 2d at 79 (quoting Niedermeier v. Office of Max S. Baucus, 153 F. Supp. 2d at 28).[6]

## IV. CONCLUSION

For the foregoing reasons, plaintiff's motion for rescission or, in the alternative, for reformation of the voluntary dismissal of her claims against defendant Unum Provident [Dkt. No. 56] will be DENIED. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
DATE: March 22, 2011             United States District Judge

---

[6] As discussed, the Court analyzed plaintiff's motion under Rule 59(e) instead of Rule 60(b). "[T]he standards that govern Rule 60(b) are even more restrictive." Taitz v. Obama, Civil Action No. 10-0151, 2010 WL 4985895, at *1 (D.D.C. Dec. 9, 2010). Thus, plaintiff's motion would similarly fail if analyzed under the more restrictive standard of Rule 60(b).